# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

GREGORY C. SHAFFER,  
                   Plaintiff,  
    v.  

COMMISSIONER OF SOCIAL SECURITY,  
                   Defendant.

Case No. 18-cv-592

Black, J.  
Bowman, M.J.

## REPORT AND RECOMMENDATION

Plaintiff Gregory C. Shaffer filed this Social Security appeal in order to challenge the Defendant's denial of his disability claim. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents five claims of error. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be REVERSED AND REMANDED for further development of the record.

### I. Summary of Administrative Record

On March 27, 2015, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging a disability onset date in March 2014.[1] Plaintiff's claim was denied initially and upon reconsideration, following which Plaintiff requested an evidentiary hearing before an administrative law judge ("ALJ"). On October 24, 2017, through counsel, Plaintiff appeared by videoconference and gave testimony before ALJ Peter Jamison; a vocational expert also testified. (Tr. 31-68). On February 1, 2018, the ALJ issued an

---

[1] Plaintiff's initial application alleged a disability onset date in March 2012, but he subsequently amended that date to March 2014. (Tr. 37). However, the ALJ's February 1, 2018 opinion fails to acknowledge this amendment. (Tr. 12).

1

adverse written decision.[2] (Tr. 10-19). The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Commissioner's final determination. Plaintiff filed this appeal to obtain additional judicial review.

Plaintiff testified that he can no longer work due to a back impairment, knee pain, pain in his right arm, breathing issues, and depression and anxiety. (Tr. 41). Plaintiff was 51 years old at the time of his alleged disability onset, and was 54 years old as of the date he was last insured for purposes of DIB.[3] He lives in a home with his wife and stepdaughter. He has a high school education and was last employed in 2010, with past relevant work as a housekeeping cleaner, a housekeeper, an industrial commercial groundkeeper, and a church janitor. (Tr. 41; Tr. 17).

The ALJ found that Plaintiff has the following severe physical impairments: "cervical spine disorder, knee impairment (osteoarthritis), lumbar spine disorder and chronic obstructive pulmonary disease (COPD)." (Tr. 12). Contrary to Plaintiff's testimony and the opinions of his treating physician, the ALJ determined that Plaintiff's depression and anxiety are "non-severe" because they cause no more than "mild" imitation in any functional area. (Tr. 13).

Although Plaintiff's counsel argued at the hearing that Plaintiff would meet or equal a Listing, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that would meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appx. 1. (Tr. 13). Plaintiff does not challenge that

---

[2] The record reflects an earlier unfavorable decision issued by ALJ Deborah Smith on March 19, 2014. (Tr. 36-37, 73-84). ALJ Smith found Plaintiff capable of medium work, including his past relevant work. However, because ALJ Jamison did not address that prior decision, this Court does not consider it further.
[3] Plaintiff was insured only through June 30, 2017, his "date last insured" or "DLI." (Tr. 12). Because he applied only for DIB, he must prove that he became disabled before that date.

determination in this Court. Instead, Plaintiff primarily argues that the ALJ erred in evaluating his residual functional capacity ("RFC") at the light exertional level, rather than at the sedentary level.

Although the ALJ found Plaintiff to be capable of light work, he did add non-exertional restrictions that further reduced that range of work:

> [He can] push and/or pull foot controls with the left and right foot occasionally; climb ramps and stairs occasionally; never climb ladders and scaffolds; occasionally stoop, kneel, crouch and crawl; never be exposed to unprotected heights, hazardous moving mechanical parts, humid/wet working conditions, extreme cold and heat and vibration; avoid concentrated exposure to dust, fumes, odors and pulmonary irritants and able to operate a motor vehicle occasionally.

(Tr. 14). Based on the RFC as determined, the ALJ found that Plaintiff would be able to perform all of his past relevant work. However, in the alternative, the ALJ determined that Plaintiff could perform other jobs in the national economy, including the representative jobs of merchandise marker, router, and power screwdriver operator. (Tr. 18). Therefore, the ALJ concluded that Plaintiff was not under a disability. (*Id.*)

Notably, if the ALJ had restricted Plaintiff to the sedentary level, Plaintiff's age would have entitled him to an automatic finding of disability under Medical Vocational Grid Rules. *See* 20 C.F.R. part 404, subpart P, App. 2, Rule 201.14. In this appeal, Plaintiff generally advocates in favor of the application of Grid Rule 201.14 based upon a sedentary exertional level. More specifically, Plaintiff asserts that the ALJ erred by: (1) by giving an equal amount of weight to all medical opinions of record; (2) by failing to account for Plaintiff's need for a cane; (3) by failing to classify Plaintiff's mental impairments as "severe"; (4) by inadequately explaining his adverse credibility determination; and (5) by failing to include additional mental and/or physical limitations in the hypothetical question posed to the vocational expert.

3

I discuss each of the alleged errors below, albeit in a slightly different order.[4] Based upon the failure of the ALJ to provide adequate analysis for this Court's review, I conclude that remand for further development of the record is required.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion....

---

[4] Plaintiff's first three errors along with his fifth assertion of error are all closely related Therefore, the discussion of those errors is combined.

4

> The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

Whether considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's Claims**

**1. Evaluation of the Medical Opinion Evidence: Claims 1, 2, 3 and 5**

Plaintiff's first three claims as well as his fifth claim of error all challenge aspects of the ALJ's evaluation of the medical opinion evidence. First, Plaintiff complains that the

ALJ improperly gave "some weight" to all of the medical opinions of record, including the non-examining state agency reviewers, a consulting psychologist, and Plaintiff's treating physician. Plaintiff suggests (incorrectly) that the ALJ was legally required to give the "most weight" to a single medical opinion. However, the citations that Plaintiff provides, SSR 96-2p and 20 C.F.R. § 1527, contain no such requirement. Plaintiff's second argument is that the ALJ failed to adequately consider his use of a cane in determining his physical RFC. Plaintiff's third claim is that the ALJ failed to find his mental impairments to be "severe" at Step 2 of the sequential process. Plaintiff's fifth claim is that, as a result of committing the foregoing errors, the ALJ failed to include all relevant work-related limitations in the record, including the RFC limitations offered by Plaintiff's treating physician.

Plaintiff's first, third, and fifth assertions of error are all founded on his contention that the ALJ should have given the physical and mental RFC opinions of his treating physician, Dr. Neama Esmaili, controlling weight.[5] Plaintiff's second argument, relating to his alleged cane use, also relates to Dr. Esmaili, insofar as Plaintiff testified that his family physician prescribed the cane.

Dr. Esmaili was the only treating physician of record who offered any opinions. He completed two separate residual functional capacity forms, both dated in June 2016 just before the expiration of Plaintiff's DLI. In both forms, Dr. Esmaili opines that Plaintiff suffers from an extreme and debilitating level of limitations that would be work-preclusive. Of note, Dr. Esmaili's opinions stand in stark contrast to all other medical opinion evidence

---

[5] The ALJ misspelled the physician's surname as "Esmali" and referred to him using feminine pronouns, but Plaintiff's testimony indicates that Dr. Esmaili is male. *See also* https://www.trihealth.com/hospitals-and-practices/loveland-family-medicine (accessed on June 25, 2019).

of record, although Plaintiff is quick to point out that all other opinions were rendered by consulting medical sources.

Dr. Esmaili opined that Plaintiff has lumbago, cervicalgia, and chronic knee pain, with "significant" and "severe pain" in his neck, low back and knees. (Tr. 407). He states that Plaintiff has reduced range of motion in both knees and lower back, and an abnormal gait, and that his depression and anxiety contribute to his symptoms and limitations. (Tr. 407-408). He opines that Plaintiff can walk less than one block, can sit or stand no more than 15 minutes at a time, and can sit or stand/walk each less than two hours in an 8-hour day, with shifting positions at will and a need for unscheduled breaks of at least 15 minutes or more several times a day during which he must either lie down or sit quietly.[6] (Tr. 408-409). Dr. Esmaili further opined Plaintiff could lift or carry no more than 10 pounds "rarely," and "never" 20 pounds, and could "never" twist, stoop or bend, crouch/squat, of climb ladders, and only rarely climb stairs. (Tr. 409). He states that his patient is extremely limited in his abilities to grasp, turn and twist objects or use his fingers for fine manipulations, and can use his hands or fingers for such tasks less than 10% of the time in any workday. Dr. Esmaili further opines that he would be "off task" 10% of every day, is incapable of tolerating even "low stress" work, and would be absent more than four days per month. (Tr. 410; *see also* Tr. 404, Tr. 16).

The regulation concerning the opinions of treating physicians, 20 C.F.R. § 404.1527(c)(2), provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable

---

[6] Considering the opinion that Plaintiff could sit not more than 15 minutes at a time, the opinion that he needs to "sit quietly" for "at least 15 minutes or more" as one of several unscheduled breaks each day is at least somewhat contradictory.

7

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.; see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir.2004). For claims filed before March 27, 2017, the treating physician rule[7] requires "the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security,* 581 F.3d 399, 406 (6th Cir.2009).

> The reasoning behind the rule has been stated as follows:
>
> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Com'r of Social Security,* 378 F.3d 541, 544 (6th Cir.2004) (quoting former 20 C.F.R. § 404.1527(d)(2)).

Despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight. Soc. Sec. Ruling 96–2p, 1996 WL 374188, at *2 (July 2, 1996). In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion, such as "the length of the treatment relationship and the frequency of examination, the nature and

---

[7] Effective March 27, 2017, many long-standing regulations have been significantly revised or rescinded, with the old hierarchy discarded. For example, a new rule set forth in 20 C.F.R. § 404.1520c entirely replaces the treating physician rule. Although some revisions apply to claims that were pending on March 27, 2017, the Commissioner has made clear that the elimination of the treating physician rule applies only to "claims filed on or after March 27, 2017." *See* Social Sec. Admin., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5845. Based on the date that Plaintiff filed his claim in this case, the "treating physician rule" and related SSRs and case law continue to apply. *Accord, Glanz v. Com'r of Soc. Sec.*, 2018 WL 3722318 at n. 5 (N.D. Ohio July 17, 2018).

extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley* 581 F.3d at 406; *see also* 20 C.F.R. § 404.1527(c)(2).

When the treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" for doing so. *Id.* Good reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d at 406-407; *see also* Soc. Sec. Rul. 96–2p. An ALJ's failure to provide an adequate explanation for according less than controlling weight to a treating source may only be excused if the error is harmless or de minimis, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Blakley,* 581 F.3d at 409 (quoting *Wilson,* 378 F.3d at 547).

As stated, Dr. Esmaili completed two RFC forms just prior to Plaintiff's DLI – one for arthritis, and the second concerning his mental impairments. Both forms reflect that Dr. Esmaili had treated Plaintiff for four years, examining him once every 3 months, since June 2013. (Tr. 399, 407).[8] The ALJ did not give Dr. Esmaili's work-preclusive opinions controlling weight, but instead stated they were entitled to only "some weight," providing the following brief explanation:

> [T]he undersigned finds that Dr. Esma[i]li's questionnaire could not be given more weight because there is little narrative support provided for the functional limitations identified; [his] assessment is not entirely consistent

---

[8] According to Dr. Esmaili, Plaintiff began treatment on June 7, 2013. (Tr. 399). In addition to the two forms at issue in this appeal, the record suggests that Dr. Esmaili opined on that first day of treatment that Plaintiff was disabled due to his "pain and discomfort." (Tr. 82, 03/19/2014 ALJ opinion, dismissing Dr. Esmaili's prior opinions as "inconsistent with her own findings" and based on "subjective complaints, which are not credible").

9

with the overall record and [he] lacked evidence available at the time of the hearing. Additionally, more weight could not be given to the arthritis medical source statement because there was little narrative support provided for the functional limitations identified; [he] lacked evidence available at the time of the hearing and the imaging studies support lesser limitations.

(Tr. 17).

Unfortunately, the ALJ failed to acknowledge either Dr. Esmaili's status as a treating physician, or the presumptive "controlling weight" that such status conveys. The ALJ's reference to Dr. Esmaili's alleged lack of access to "evidence available at the time of the hearing" makes little sense, since Dr. Esmaili remained Plaintiff's treating physician at the time of the hearing, and his opinions were rendered just two weeks prior to the relevant date last insured ("DLI"). A treating physician's opinions must be given controlling weight unless they are not "well-supported" or are "inconsistent with the other substantial evidence." Here, the ALJ's statements that Dr. Esmaili provided "little *narrative* support" and that they were "not *entirely* consistent with the overall record" are ambiguous, leaving this Court to speculate whether substantial evidence supports the opinions despite the opinions being not "entirely" consistent with "the overall record." Likewise, the undersigned cannot discern whether the ALJ's criticism of the lack of sufficient "narrative" explanation on the forms is intended to suggest the opinions are otherwise unsupported by clinical and diagnostic records. This ambiguity in the ALJ's analysis is magnified when the undersigned considers the specific range of motion percentiles and medical diagnoses that Dr. Esmaili provided.

In short, the ALJ's articulated reasons for rejecting Dr. Esmaili's opinions do not constitute "good reasons" for rejecting all of his opinions wholesale. As even the Commissioner acknowledges, the entirety of the ALJ's decision in this case – including but not limited to the analysis of Dr. Esmaili's opinions - was exceedingly "brief." (Doc. 7

at 1). The Commissioner attempts to shore up that analysis by reference to additional medical records, arguing that Dr. Esmaili's assessments were "wildly inconsistent with [his] treatment notes." (*Id.*) On that score, the Commissioner's arguments *may* ultimately prevail. However, unless this Court finds Dr. Esmaili's opinions to be "so patently deficient that the Commissioner could not possibly credit [them]," *Blakley,* 581 F.3d at 409 (quoting *Wilson,* 378 F.3d at 547), this Court must reverse and remand for further development due to this clear procedural error. The record presented is admittedly close given the "outlier" nature of the treating physician's opinions. However, based on the totality of the record, the undersigned concludes that the extreme brevity and ambiguous nature of the ALJ's analysis of Dr. Esmaili's RFC opinions requires remand.

Despite that conclusion, if the ALJ's articulation error were limited to the analysis of Dr. Esmaili's mental impairment opinions, the undersigned might not recommend remand, based on the "patently deficient" nature of those particular opinions. On the mental RFC form, Dr. Esmaili opines that Plaintiff suffers from "marked" (i.e. Listing level) impairments in multiple functional areas – even though virtually no other evidence in the record (including the undersigned's review of Dr. Esmaili's records, consulting opinions, and Plaintiff's own testimony) would support that level of severity. In fact, Plaintiff points to no clinical records by Dr. Esmaili or to any other evidence in the record that would even marginally support the extreme and debilitating level of mental impairment suggested by Dr. Esmaili.

Nevertheless, given other errors pertaining to the ALJ's assessment of Plaintiff's physical RFC and his subjective complaints, remand is required. Remand is not a "useless formality" because it is the province of the Commissioner and not that of this

Court to determine Plaintiff's limitations and the jobs available to him. *See Simpson v. Com'r of Soc. Sec.*, 344 Fed Appx. 181, 192 (6th Cir. 2009).

The conclusion that remand for further development of the record is required is supported not only by the ALJ's articulation error concerning Dr. Esmaili's physical RFC opinions, but also by the ALJ's failure to address Plaintiff's alleged need for a cane. Plaintiff brought the cane to the hearing, and testified to its use both in and outside his home. Plaintiff argues that the use of a cane required the ALJ to limit him to sedentary work, with a corresponding mandatory finding of "disability" under Grid Rule 201.14. Plaintiff testified that his family doctor prescribed the cane. (Tr. 45). Despite his testimony and specific questioning about the cane by the ALJ, the ALJ's opinion contains no reference to it, stating only that "[t]he record is devoid of evidence that her [sic] impairments resulted in the inability to ambulate effectively." (Tr. 14). Although the Commissioner reasonably argues that the prescription for the cane post-dates Plaintiff's DLI and other records supporting cane use are minimal (*see* Tr. 422, 434, 436-437), the failure of the ALJ to so much as mention the cane adds to the inadequate analysis of the record as a whole.

On remand, the ALJ also should better articulate the weight given to the consulting opinions. The ALJ gave all consulting opinions "some" weight after finding them to be "consistent with the totality of the medical evidence." (Tr. 16, citing Tr. 97-98, 112, 372-379). However, rather confusingly, the ALJ states in the next sentence that he declines to give greater weight to the same opinions "because the remainder of the assessment is not consistent with the totality of the medical evidence because the consultants lacked

the evidence available during the hearing." (*Id.*)[9]  *See also generally, Gayheart v. Com'r of Soc. Sec.*, 710 F.3d 365, 379-380 (6th Cir. 2013) (holding that the Commissioner may not apply "greater scrutiny to a treating-source opinion" than to a consulting opinion).

Plaintiff's fifth assertion of error is cumulative.  Based upon the asserted errors in the ALJ's evaluation of the medical evidence, Plaintiff argues that at Step 5 of the sequential analysis, the ALJ "left out the supported forms of Dr. Esmali [sic] at Tr. 399-410." (Doc. 5 at 9).  Given the referenced articulation error in the evaluation of a treating physician's opinions and additional ambiguities in the analysis of the consulting opinions, the undersigned is unable to adequately determine whether the hypothetical question was supported by substantial evidence in this case.

### 2. The Adverse Credibility Determination

Plaintiff's Statement of Errors contains an additional claim that the ALJ erred in his evaluation of Plaintiff's subjective complaints.  This type of assessment traditionally has been described as the "credibility" determination, but more recently has been redefined as a "consistency determination."[10]  Based on the relatively benign objective physical evidence presented by Plaintiff in support of the extreme pain and fatigue that he alleged,

---

[9] Several portions of the ALJ's analysis of consulting opinions are unclear, including which assessment or assessments (physical or mental, and by which consultants) were "not consistent with the totality of the medical evidence" after the ALJ found all of the consultants' mental and physical determinations to be "consistent with the totality of the medical evidence" in the preceding sentence.  Arguably, an opinion may remain "consistent" with the "totality" of evidence even if the consultant has not reviewed the most recent records, so long as the later records do not show different limitations.  Here, the ALJ adopted, without apparent revision, the consultants' conclusion that Plaintiff's mental impairments were nonsevere.  By contrast, the ALJ's physical RFC findings included additional limitations beyond that suggested by the consultants.

[10] The assessment of symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record."  SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added).  Despite the linguistic awkwardness, courts agree that the prior case law remains fully applicable to the renamed "consistency determination" under SSR 16-3p, with few exceptions.  *See Duty v. Com'r of Soc. Sec.*, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18, 2018).

the ALJ's assessment of the consistency of Plaintiff's subjective complaints was critical. However, the ALJ's rationale for his finding that Plaintiff statements were "not entirely consistent with the medical evidence and other evidence in the record" was minimal and somewhat vague. (Tr. 16). Although the ALJ cited records showing normal examination findings, he also cited an MRI that reflected a disc protrusion and central canal stenosis, along with records documenting Plaintiff's consistent reports of low back pain and knee pain, and a diagnosis of radiculopathy and spinal stenosis in the lumbar region. (Tr. 15).

It remains the province of the ALJ and not the reviewing court, to assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See generally Rogers v. Com'r*, 486 F.3d 234, 247 (6th Cir. 2007). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387.

Because the ALJ's articulation of the consistency/credibility issue was overly brief, and the issue is relatively critical, the undersigned recommends remand for reconsideration of this issue as well.

### 3. *Faucher* and the Basis for Remand for Further Fact-finding

Plaintiff argues that the proof of his disability is "strong based on the supported limitations" of the RFC opinions submitted by Dr. Esmaili. (Doc. 5 at 9). Respectfully, the undersigned must disagree. Remand is required in this case primarily based on the ALJ's failure to acknowledge Dr. Esmaili's status as a treating physician, as well as the overly brief discussion of some medical opinion evidence and records (including the asserted cane use) as discussed above.

In addition to his primary reliance on the RFC opinions of Dr. Esmaili, Plaintiff cites to one-time examinations with an orthopedist who diagnosed mild to moderate arthritis and chondromalacia, and with a pain specialist on July 1, 2016. (*See* generally Tr. 416-428, Tr. 436). The cursory nature of Plaintiff's references to the orthopedist and pain doctor warrants little discussion, but it is worth pointing out that the examining orthopedist noted full range of motion, full strength and flexion, and multiple normal tests of Plaintiff's knees and legs, including a normal gait. (Tr. 436). The pain specialist also noted numerous normal examination findings, including all findings relating to his upper and lower extremities and spine. (Tr. 416-428). The exam revealed a normal gait, full upper and lower arm strength, full finger muscle strength and essentially all other normal measurements of strength, tone, and stability. (Tr. 422-425). The pain specialist counseled Plaintiff to return for further testing and a treatment plan that included "interventions to decrease the opioid dependency" but there is no evidence that Plaintiff ever returned. (Tr. 428).

Last, Plaintiff's Statement of Errors advocates for reversal based on a two-sentence argument that the ALJ failed to address his obesity. (Doc. 5 at 5). However, it does not appear that any physician opined that Plaintiff had any functional limitation

15

resulting from obesity (or even diagnosed obesity) prior to Plaintiff's DLI, notwithstanding references in the record to Plaintiff's height, weight and BMI. To the extent that Plaintiff believes the record supports additional limitation based on his obesity, he remains free to present that evidence on remand.

A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Faucher,* 17 F.3d at 176.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **REVERSED** and **REMANDED** for further development of the record under sentence four, and that this case be **CLOSED.**

                                            */s Stephanie K. Bowman*
                                            Stephanie K. Bowman
                                            United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

GREGORY C. SHAFFER,                            Case No. 18-cv-592

                                                                Black, J.
                  Plaintiff,                         Bowman, M.J.

     v.

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).